ROBERT J. GAUVIN *vs.* RICHARD CLARK & others.[1]

Worcester. December 6, 1988. — April 3, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Special questions to jury, Transfer of action to Superior Court, Requests for findings and rulings. *Negligence,* Athletics, Hockey stick, Standard of care. *Wilful, Wanton, or Reckless Conduct.*

This court concluded that participants in an athletic event owe a duty to other participants to refrain from reckless misconduct and that liability may result from injuries caused a player by reason of a breach of that duty. [454]

At the trial of an action in tort seeking damages for severe injuries sustained by the plaintiff in an ice hockey game when he was struck in the abdomen by the "butt-end" of a defendant's hockey stick, the judge properly entered judgment in favor of the defendant where the jury, in answer to a special question, found that the defendant had not acted recklessly; furthermore, the judge did not err in denying the defendant's request for an instruction to the jury with regard to the duty each player owed to all other players to refrain from conduct in violation of a safety rule and, instead, instructing them in terms of recklessness. [455]

Upon transfer of an action to a District Court for trial under G. L. c. 231, § 102C, followed by findings in favor of the defendants, review by the Appellate Division finding no reversible error and dismissing the District Court judge's report, and retransfer of the action to the Superior Court, the Superior Court judge did not err by admitting in evidence the District Court judge's finding in favor of the defendants where, although the District Court judge had erred in denying the plaintiff certain requests for rulings of law and the Appellate Division had erred in dismissing the District Court judge's report, the District Court judge had made his determination based on an evaluation of the evidence rather than on errors of law made by the Appellate Division. [456-458]

CIVIL ACTION commenced in the Superior Court Department on January 28, 1983.

[1] Mark Bombard, the coach of the Nichols College team, and Nichols College. The judge granted motions for directed verdict in favor of Bombard and Nichols College. Gauvin does not appeal from that judgment.

Following transfer to the Worcester Division of the District Court Department and retransfer to the Superior Court, the case was tried before *Gerald F. O'Neill, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard M. Welsh* for the plaintiff.

*Donald E. Phillips* for Richard Clark.

ABRAMS, J. At issue is what standard of care participants in an athletic event owe one another. The plaintiff, Robert J. Gauvin, appeals from the Superior Court judgment entered in favor of the defendant, Richard Clark, as a result of special questions put to the jury. See Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). After the judge entered judgment, the plaintiff moved for a new trial or to alter and amend the judgment. The judge denied that motion because the jury concluded that Clark did not act wilfully, wantonly, or recklessly. The plaintiff appealed. On our own initiative, we transferred the case to this court. We hold that participants in an athletic event owe a duty to other participants to refrain from reckless misconduct and liability may result from injuries caused a player by reason of the breach of that duty. See Restatement (Second) of Torts § 500 (1965).[2] Because of the jury's determination that Clark did not act with reckless misconduct, we conclude that the judge correctly entered judgment for the defendant.

For purposes of this appeal, the parties agree to the following facts. On January 30, 1980, the varsity hockey team of Worcester State College played against the team from Nichols College. Gauvin played center position for the Worcester State College team. Clark played center for the Nichols College team. During the second period, Gauvin was involved in a face-off with Clark, in which the referee dropped the puck,

---

[2] The judge instructed the jury in terms of "wilful, wanton, and reckless conduct," see *Commonwealth* v. *Welansky*, 316 Mass. 383, 397-399 (1944). For the sake of brevity, we refer only to reckless misconduct. The special note to the Restatement (Second) of Torts § 500 states that "the conduct described in this section is often called 'wanton or wilful misconduct' both in statutes and judicial opinions." We do not view the change in wording as imposing a different standard.

and both men vied for possession. Clark won the face-off. As the puck slid down the ice toward the Nichols College team's net, Gauvin felt a stick in his abdomen. Gauvin saw Clark's hockey stick coming away from Gauvin's abdomen, with the back of the hockey stick, called the "butt-end," protruding from Clark's hands. At trial, Harry Maxfield, a teammate of Gauvin, testified that he saw Clark give Gauvin a shot to the midsection after the puck slid down toward the Nichols goal. The blow to Gauvin's abdomen came after the face-off had been completed. The blow was struck when Gauvin and Clark were no longer competing for the puck.

As a result of the blow to his abdomen, Gauvin was hospitalized and underwent surgery. His spleen was removed. He missed seven weeks of school. Gauvin still suffers from bladder and abdominal pain.

The safety rules[3] which govern the game of hockey prohibit "butt-ending." Butt-ending is the practice of taking the end of the stick which does not come into contact with the puck and driving this part of the stick into another player's body. Butt-ending is unexpected and unsportsmanlike conduct for a hockey game. The rules also prohibit a player, during a face-off, from making any physical contact with his opponent's body by means of his stick, except in the course of playing the puck. Butt-ending is penalized as a major penalty and also results in a disqualification of the penalized player.

Both Gauvin and Clark understood that the game was played according to a recognized set of rules, which prohibited butt-ending. Clark understood that the prohibition on butt-ending

---

[3] A safety rule is one which is designed primarily to protect participants from serious injury. See Restatement (Second) of Torts § 50 comment b (1965). We do not rule, however, that violation of a safety rule is always a necessary element of a tort committed during an athletic competition for which the courts should impose liability. See, e.g., *Stewart* v. *D & R Welding Supply Co.*, 51 Ill. App. 3d 597, 600 (1977); Note, Injuries Resulting from Nonintentional Acts in Organized Contact Sports: The Theories of Recovery Available to the Injured Athlete, 12 Ind. L. Rev. 687, 702-703 (1979). We leave for another day the issue of a player's acting wilfully, wantonly, or recklessly in injuring another but not violating a specific safety rule.

was designed for the protection of the players. Gauvin's coach, John Laughlin, was knowledgeable about the game of hockey, and had trained Gauvin and his teammates. Clark's coaches, first Alan Kubicki and then the defendant, Mark Bombard, were both knowledgeable about the game of hockey. They had trained Clark and his teammates in the rules of hockey.

The case was tried to a jury. The case was submitted to the jury on special questions. See Mass. R. Civ. P. 49 (a). *Solimene v. B. Grauel & Co., KG,* 399 Mass. 790, 800-801 (1987). The jury rendered a special verdict in which it answered six specific questions and found the following facts. Clark had butt-ended Gauvin. Clark had violated a safety rule, thus causing Gauvin's injuries. By playing hockey, Gauvin did not consent to the act which caused his injury. The jury concluded, however, that Clark had not acted wilfully, wantonly, or recklessly in causing Gauvin's injury. The jury assessed damages in the amount of $30,000. Based on the jury's answer to the question whether Clark acted wilfully, wantonly, or recklessly, the judge entered judgment in favor of the defendant Clark.[4]

---

[4] Pursuant to his duty to harmonize the jury's answers to the special questions, see *Solimene, supra* at 800-802, the judge, in denying the plaintiff's motion for a new trial or to alter and amend the judgments, wrote in part as follows: "The plaintiff interprets *Nabozny* [v. *Barnhill,* 31 Ill. App. 3d 212 (1975),] as requiring the entry of a verdict for the plaintiff on the basis of the jury's finding that the defendant 'butt-ended' the plaintiff . . . . The Court declines to so rule.

"The issue of the legal duty owed by one participant in a supervised athletic contest to another has not been decided in Massachusetts. For the purpose of this case, the trial court adopted the rule of the Restatement of Torts (2d) Section 500. . . .

"The essence of such conduct is a deliberate act involving a high degree of likelihood that substantial harm will result to another. Not all violations of statute are recognized as involving a high degree of probability that serious harm will result (comment e to Restatement, Section 500 *supra*).

"The special jury verdict required a finding only that the Defendant Clark performed the physical act defined as 'butt ending'; that this act was in violation of a safety rule, and that said violation was a proximate cause of the plaintiff's injuries. Whether the defendant or a reasonable person in the defendant's position knew or should have known that such an act involved a high degree of likelihood that substantial harm would befall the plaintiff was an additional question of fact requiring an affirmative answer prior to

1. *Standard of care*. Gauvin argues that, since the jury found that Clark violated a safety rule, and Clark's action caused Gauvin's injury, judgment should have been entered in favor of Gauvin, despite the fact that the jury found that Clark had not acted recklessly. We do not agree.

The problem of imposing a duty of care on participants in a sports competition is a difficult one. Players, when they engage in sport, agree to undergo some physical contacts which could amount to assault and battery absent the players' consent. Restatement (Second) of Torts § 50 comment b (1965). The courts are wary of imposing wide tort liability on sports participants, lest the law chill the vigor of athletic competition. See, e.g., *Ross* v. *Clouser*, 637 S.W.2d 11, 14 (Mo. 1982). Nevertheless, "some of the restraints of civilization must accompany every athlete on to the playing field." *Nabozny* v. *Barnhill*, 31 Ill. App. 3d 212, 215 (1975). "[R]easonable controls should exist to protect the players and the game." *Ross* v. *Clouser*, *supra*.

The majority of jurisdictions which have considered this issue have concluded that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety. See, e.g., *Hackbart* v. *Cincinnati Bengals, Inc.*, 601 F.2d 516, 524 (10th Cir. 1979); *Nabozny* v. *Barnhill, supra*; *Ross* v. *Clouser, supra* at 14; *Kabella* v. *Bouschelle*, 100 N.M. 461, 465 (1983). Restatement (Second) of Torts § 500 comments e & g (1965).

We adopt this standard. Allowing the imposition of liability in cases of reckless disregard of safety diminishes the need for players to seek retaliation during the game or future games. See *Hackbart* v. *Cincinnati Bengals, Inc., supra* at 521. Precluding the imposition of liability in cases of negligence without reckless misconduct furthers the policy that "[v]igorous and active participation in sporting events should not be chilled by the threat of litigation." *Kabella* v. *Bouschelle, supra*.[5]

the imposition of liability for wilful, wanton and reckless conduct. The jury did not so find and there is no inconsistency in the answers to the special questions."

[5] Some jurisdictions explain the limitation on liability in sports competitions to cases of reckless conduct in terms of the doctrine of assumption of

Gauvin reads the leading case of *Nabozny* v. *Barnhill, supra*, to mean that Clark should be held liable, because the jury found that Clark had violated a safety rule, even though the jury found that Clark had not acted wilfully, wantonly, or recklessly. Some of *Nabozny*'s language might seem to imply that all that is needed to establish an actionable tort is breach of a safety rule. However, "we see *Nabozny* as establishing the standard of conduct to be willfullness or a reckless disregard of safety . . . . This appears clear . . . ." *Oswald* v. *Township High School Dist. No. 214*, 84 Ill. App. 3d 723, 726-727 (1980). See Note, Tort Liability for Players in Contact Sports, 45 UMKC L. Rev. 119, 124 (1976). The judge below applied the proper rule of law in entering judgment in favor of Clark when the jury found that Clark had not acted recklessly.

Gauvin argues that the judge erred in denying his request for an instruction which tracked the wording of *Nabozny*, in connection with the duty each player owes to all other players to refrain from conduct in violation of a safety rule.[6] The judge instructed the jurors in terms of recklessness. Because we conclude that the judge was correct in his analysis of *Nabozny* and in his decision to follow the Restatement (Second) of Torts § 500, see note 4, *supra*, there was no error in the denial of the plaintiff's request.

---

the risk. See *Novak* v. *Lamar Ins. Co.*, 488 So. 2d 740 (La. Ct. App. 1986), quoting *Bourque* v. *Duplechin*, 331 So. 2d 40, 42 (La. Ct. App. 1976). The Legislature has abolished the defense of assumption of the risk in Massachusetts, however. G. L. c. 231, § 85 (1986 ed.). Because the doctrine has been abolished, "the focus of the analysis in [sport cases] has shifted entirely to the defendant's duty under the circumstances and should no longer be discussed in terms of the plaintiff's assumption of the risk." *Blair* v. *Mt. Hood Meadows Dev. Corp.*, 291 Or. 293, 301 (1981). See *Kuehner* v. *Green*, 436 So. 2d 78, 81 (Fla. 1983) (Boyd, J., concurring). Thus, in setting out the standard of care, we discuss the policy in terms of the duty.

[6] The requested instruction provided: "When athletes are engaged in an athletic competition; all teams involved are trained and coached by knowledgeable personnel; a recognized set of rules governs the conduct of the competition; and a safety rule is contained therein which is primarily designed to protect players from serious injury, a player is then charged with a legal duty to every other player on the field to refrain from conduct proscribed by a safety rule."

2. *Request for rulings*. This case followed the procedural path provided by G. L. c. 231, § 102C (1986 ed.). The case was originally brought in the Superior Court, but was transferred to the District Court. At trial, the judge of the District Court found in favor of all defendants. The Appellate Division of the District Courts reviewed the decision, found no reversible error, and therefore dismissed the District Court judge's report. The case was then retransferred to the Superior Court and tried before a jury.

The finding of the District Court was admitted in evidence at the jury trial. General Laws c. 231, § 102C, provides for admitting the District Court finding in evidence. However, if the District Court judge's finding is based on errors of law made by the Appellate Division, the finding is not admissible when the case is tried in Superior Court. *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 553 (1975). *Henry* v. *Mansfield Beauty Academy, Inc.*, 353 Mass. 507, 508-509 (1968).

Gauvin argues that the District Court judge's finding should not have been admitted in evidence in the Superior Court trial. He argues that the judge erred in denying him certain requests for rulings of law, and the Appellate Division of the District Courts erred in dismissing the District Court judge's report.

We agree with Gauvin's arguments challenging the District Court judge's finding for the defendants and the Appellate Division's decision. We conclude, however, that the Superior Court judge did not err by admitting in evidence the District Court judge's finding. Gauvin requested rulings that "the evidence warrants a finding that" Clark acted with a reckless disregard for Gauvin's safety, causing injury to him, and that Clark acted in an unexpected and unsportsmanlike way, with a reckless lack of concern for Gauvin's safety. Gauvin was asking the judge for a ruling that, as a matter of law, there was sufficient evidence from which a reasonable fact finder could determine these facts. If a party requests from a District Court judge a ruling of law that "the evidence warrants a finding" of a particular fact, even if the judge does not himself believe the fact to be true, the judge should allow the request as long as there is sufficient evidence from which a rational

fact finder could determine that the fact is true. The judge also may state that he or she does not so find. See *DiGesse* v. *Columbia Pontiac Co.*, 369 Mass. 99, 102-103 (1975), quoting *Bresnick* v. *Heath*, 292 Mass. 293, 296 (1935). There clearly was sufficient evidence in this case which could have supported a finding of recklessness. "[Gauvin] was entitled to that ruling or to a statement of findings of facts showing that the requested ruling had become irrelevant." *DiGesse* v. *Columbia Pontiac Co.*, *supra*, quoting *Bresnick* v. *Heath*, *supra*. The judge neither granted Gauvin's request for rulings, nor set out his own specific findings of fact. When a District Court judge errs in ruling on such a request, his disposition of the case "will be deemed on appeal [to the Appellate Division] the result of such ruling of law, and not the result of a consideration of the question of fact, unless the contrary is demonstrated by specific findings of fact as distinguished from a mere assertion that unstated findings make the requested ruling immaterial." *DiGesse* v. *Columbia Pontiac Co.*, *supra* at 103, quoting *Rummel* v. *Peters*, 314 Mass. 504, 517-518 (1943). The Appellate Division therefore incorrectly concluded that the District Court judge did not err.

The standard for a Superior Court judge in his review of the District Court finding is different from the standard of review to be used by the Appellate Division. The job of the Superior Court judge is to determine whether the "District Court judge's finding . . . is *based on errors of law* made by the Appellate Division" (emphasis added). *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 553 (1975). In reviewing the District Court judge's finding, the Superior Court judge should consider the allowance and denials of requests as well as the report to determine whether there is an error of substantive law. If the District Court judge's finding is so considered, it is clear that the Superior Court judge did not err in his determination to admit the District Court judge's finding in evidence.

The District Court judge denied Gauvin's request for a finding of fact that "Richard Clark thrust the butt-end of his hockey stick into [Gauvin's] midsection, with extreme force, thereby rupturing his spleen." The judge also denied the request for a

finding that Clark's conduct caused Gauvin's injury. In his report to the Appellate Division, the judge stated that there was evidence "tending to show" that Clark had butt-ended Gauvin. From these denials and the report, it becomes clear that the basis of the judge's denial of the plaintiff's request for rulings of law was that he did not find credible the evidence of butt-ending by Clark. The judge's finding in favor of the defendants therefore was based on his determination that he did not credit the evidence that Clark had butt-ended Gauvin, and not on an erroneous view of sufficiency of the evidence. Because it became clear that the District Court judge made his determination based on an evaluation of the evidence, the Superior Court judge did not err in admitting the District Court finding in evidence.

*Judgment affirmed.*