Fishman, J.
INTRODUCTION
Plaintiff, Derek A. Lautieri (“Lautieri”), was injured during a triathlon held in Hudson, Massachusetts. Lautieri brought this action against the defendant/third-party plaintiff, Jorun G. Bae (“Bae”), claiming negligence for Bae’s failure to exercise reasonable care in the operation of her motor vehicle. Bae in turn brought an action against third-party defendants USA Triathlon, Inc. (“USAT”) (Count I of Third-Party Complaint), William Fiske (“Fiske”) d/b/a Fiske Independent Race Management (Count II)[2] and the Boys and Girls Clubs of Metrowest, Inc. (“B&G Clubs”) (Count III), seeking contribution in the event that the plaintiff recovers damages for his alleged injuries.[3] Specifically, Bae claims negligence on part of the third-party defendants for failure to provide a safe layout for the race course, failure to provide warning signs and directions, and failure to place volunteers and/or police personnel at the intersection where the incident occurred. This matter is before this Court on the third-party defendants’ motions for summary judgment as to all counts. For the reasons described below, the third party defendants’ motions are ALLOWED, in part, and DENIED, in part.
BACKGROUND
On June 4, 2000, Lautieri participated in an organized triathlon, one leg of which was competitive bicycling. Bae, while operating a motor vehicle, came to the intersection of Main Street and Lewis Street in Hudson. Bae stopped, looked to her left, looked to her right, and then looked to her left again for approaching traffic. Seeing no vehicles approaching, Bae proceeded straight through the intersection. Lautieri, then approaching the intersection with four or five other bicyclists, turned to avoid Bae’s vehicle but did not have sufficient time to prevent a collision. Lautieri suffered significant injuries as a result of the accident.
On May 12, 2000, prior to the race, Lautieri completed and signed a “USA Triathlon Annual Licence Application Waiver.” That waiver contained the following language in the form duplicated below:
I acknowledge that a triathlon or bisport/duathlon event is an extreme test of a person’s physical and mental limits and carries with it the potential for death, serious injury and property loss. I HEREBY ASSUME THE RISKS OF PARTICIPATING IN TRIATHLONS OR BISPORT/DUATHLON EVENTS. I certify that I am physically fit and have sufficiently trained for participating in this event(s), and have not been advised against participating by a qualified health professional. I acknowledge that my statements in this AWRL are being accepted by the USAT in consideration for allowing me to become a member in USAT and are being relied upon by USAT and the various race sponsors, organizers and administrators in permitting me to participate in any USAT sanctioned event. . . (b) I AGREE that prior to participating in an event I will inspect the race course, facilities, equipment and areas to be used and if I believe they are unsafe I will immediately advise the person supervising the event activity or *5 area; (c) I waive, release, AND DISCHARGE for any and all claims, losses or liabilities for death, personal injury, partial or permanent disability, property damage, medical or hospital bills, theft, or damage of any kid, including economic losses, which may in the future arise out of or relate to my participation in or my traveling to and from a USAT sanctioned event, THE FOLLOWING PERSONS OR ENTITIES: USAT, EVENT SPONSORS, RACE DIRECTORS, EVENT PRODUCERS, VOLUNTEERS, ALL STATES, CITIES, COUNTIES, OR LOCALITIES IN WHICH EVENTS OR SEGMENTS OR EVENTS ARE HELD, AND THE OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES AND AGENTS OF ANY OF THE ABOVE, EVEN IF SUCH CLAIMS, LOSSES OR LIABILITIES ARE CAUSED BY THE NEGLIGENT ACTS OF OMISSIONS OF THE PERSONS I AM HEREBY RELEASING ORARE CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF ANY OTHER PERSON OR ENTITY; (d) I ACKNOWLEDGE that there may be traffic or persons on the course route, and I ASSUME THE RISK OF RUNNING, BIKING, SWIMMING OR PARTICIPATING IN ANY OTHER EVENT SANCTIONED BY USAT.
(e) I AGREE NOT TO SUE any of the persons or entities mentioned above in paragraph (c) for any of the claims, losses or liabilities that I have waived, released or discharged herein; (f) I INDEMNIFY AND HOLD HARMLESS the persons or entities mentioned above in paragraph (c) for any and all claims made or liabilities assessed against them as a result of my acts or inactions (ii) the actions, inactions or negligence of others including those parties hereby indemnified (iii) the conditions of the facilities, equipment or areas where the event or activity is being conducted (iv) the Competitive Rules (v) any other harm caused by an occurrence related to a USAT event. . .
Prior to the race, Lautieri also completed and signed a “Wet ‘N’ Wild Triathlon Application, ” which contained the following language:
In consideration of the entry being accepted, I do hereby forever waive and release Fiske Independent Race Management, the sponsoring organization, companies, agents, representatives, assigns and successors from all claims of action, which I at any time acquire as a result of participation in the event for which this entry relates.
USAT is the governing body of triathlon races and promulgates safety requirements for use by organizers of sanctioned triathlon races. The subject triathlon was sanctioned by USAT based upon an application submitted by Fiske. On that application, William Fiske is identified as the Race Director. The Boys and Girls Clubs of Metrowest, Inc. provided a number of volunteers for the event.
DISCUSSION
A party is entitled to summary judgment, “if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material facts and that the moving party is entitled to a judgment as a matter of law.” Mass.R.Civ.P. 56(c). The burden of the moving party “is not sustained by the mere filing of the summary judgment motion,” but “must be supported by one or more of the materials listed in rule 56(c) . . .” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714, citing Celotex v. Corp. v. Catrett, 477 U.S. 317, 328 (1986). That party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass, at 716. “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989), citing O’Brion, Russell & Co. v. LeMay, 370 Mass. 243, 245 (1976).
General Laws c. 213B, §1, provides in pertinent part: “(W]here two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them.” The Supreme Judicial Court (“SJC”) has consistently interpreted the language of this statute to mean that an “action for contribution is not barred if, at the time the accident occurred, the party for whom contribution is sought could have been held liable in tort.” McGrath v. Stanley, 397 Mass. 775, 781 (1986) (emphasis in original). See also, Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 346-50 (1983); Liberty Mutual Ins. Co. v. Westerlind, 374 Mass. 524, 526 (1978); O’Mara v. H.P. Hood & Sons, Inc., 359 Mass. 235, 238 (1971).[4] Therefore, in order for Bae to be able to enforce a right of contribution against any of the third-party defendants, she must be able to show that the particular third-party defendant could have been found tortiously liable to the plaintiff at the time the accident occurred. Each third-party defendant will be discussed separately below.
A. William Fiske d/b/a/ Fiske Independent Race Management
Fiske argues that he was released from all liability regarding the Wet ‘N’ Wild Triathlon when Lautieri signed the USA Triathlon Annual Licence Application Waiver and the Wet ‘N’ Wild Triathlon Application. Whether the waivers signed by the plaintiff are enforceable to bar any claims in tort against Fiske is a question of law to be decide by this Court.
*6 “Massachusetts law favors the enforcement of releases.” Sharon v. City of Newton, 437 Mass. 99, 105 (2002). “There can be no doubt. .. that under the law of Massachusetts ... in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf." Id., quoting Schell v. Ford, 270 F.2d 384, 386 (1st Cir. 1959). While any doubts about the interpretation of a release must be resolved in the favor of the plaintiff, an unambiguous and comprehensive release will be enforced as drafted. Cormier v. Central Massachusetts Chapter of the National Safety Council, 416 Mass. 286, 288 (1993).
Thus, in Cormier, the SJC upheld summary judgment against a plaintiff who executed a waiver of liability prior to sustaining injuries while riding on a motorcycle safety course. The Court found the waiver sufficient to bar a claim in negligence, even though the word negligence never appeared in the document. Id. at 288. The SJC also rejected the plaintiffs claim that she believed that she was only relieving the defendant for liability for any accidental injury, not for any injury caused by the defendant’s negligence, holding that her “subjective intent not to release any claim for negligence, doles] not furnish a basis for avoiding the release on the ground of mistake.” Id. at 289.
Upon examination of the two releases signed by Lautieri prior to the subject triathlon, it is evident that he executed an unambiguous release of the third-party defendant, William Fiske. The USA Triathlon Annual Licence Application Waiver clearly and unambiguously releases “RACE DIRECTORS” from “any and all claims, losses or liabilities ...” Fiske is listed as the “Race Director” on the 2000 USA Triathlon Event Sanction Application submitted to USAT. Furthermore, the Wet ‘N’ Wild Triathlon Application releases “Fiske Independent Race Management, the sponsoring organization, companies, agents, representatives, assigns and successors from all claims of action . . .” To the extent that Bae argues that the phrase “agents, representatives, assigns and successors” might refer to the phrase “sponsoring organization,” and that Fiske Independent Race Managementwhile not a legal entitydoes not actually refer to William Fiske, individually, such interpretations are not reasonable given the plain meaning of the waiver language.[5] Nevertheless, even if this Court were to hold that the Wet ‘N’ Wild Triathlon Application was sufficiently ambiguous to render the waiver unenforceable, the language of the USA Triathlon Annual Licence Application Waiver is unambiguous and releases Fiske from liability. Thus, Fiske’s motion for summary judgment, as it relates to Bae’s claim of negligence against him, is well founded.
This analysis, however, does not end the matter. Both the SJC and the Appeals Court “have noted that releases are effective against liability for ordinary negligence.” Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct 17, 18 (1997) (emphasis in original), citing Lee v. Allied Sport Associates, Inc., 349 Mass. 544, 551 (1965). In Zavras, the Appeals Court, citing reasons of public policy, held that the owner of a premises at which organized dirt bike races were held did not exempt itself from liability for gross negligence by requiring participants in races to sign a release as a condition of participating. 44 Mass.App.Ct. at 18-19. See also, Restatement (Second) of Contracts § 195 (1981) (“A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy”). The Zavaras court noted that there is “substantial authority . . . [for] the position that while a party may contract against liability for harm caused by its negligence, it may not do so with respect to its gross negligence.” 44 Mass.App.Ct. at 19.
The present case is indistinguishable from Zavras. Here, Lautieri signed two valid waivers releasing Fiske, among others, from any and all liability that might arise from his participation in the subject triathlon race. While these waivers are sufficient to release Fiske from all liability for harm caused by his own negligence, they do not release him from his own gross negligence.
Thus, for purposes of determining contribution, the question for this Court becomes whether a finder of fact could find Fiske liable to Lautieri for gross negligence. Based on the summary judgment record viewed in a light most favorable to Bae, a genuine issue of material fact exists concerning whether the accident resulted from Fiske’s gross negligence.
Gross negligence is defined as “very great negligence, or the absence of slight diligence, or the want of even scant care.” Zavras, 44 Mass.App.Ct. at 20, quoting Altman v. Aronson, 231 Mass. 588, 591 (1919).[6] As this definition is necessarily vague, it is important to note that courts have found that “(industry standards may be some evidence of negligence.” Fidalgo v. Columbus McKinnon Corp., 56 Mass.App.Ct. 176, 184 (2002), citing Poirier v. Plymouth, 374 Mass. 206, 211 (1978); Resendes v. Boston Edison Co., 38 Mass.App.Ct. 344, 358 (1995). Bae has submitted the USAT 2000 Event Sanctioning Guidelines & Requirements as evidence of the negligence of Fiske and the other third-party defendants. In the section entitled “Bike,” the USAT triathlon regulations state: “2. It is highly recommended to close the [bike race] road to traffic. If not possible, cone bike lanes with a minimum width of six feet from vehicles ... 9. Control stoplights/stop sign intersections, traffic hazards and turnarounds with police and an ample amount of volunteers ... 12. Use ‘Race in Progress’ or ‘Watch for Cyclists’ signs placed along the course to help warn motorists about conditions . . . 23. All turns, turn-arounds, traffic hazards and intersections must be monitored and marked with signs and volun *7 teers. Any intersections with stop signs or stop lights must be controlled by police or professional traffic personnel.” Based on the record before this Court, it does not appear that Fiske, as Race Director, heeded any of the guidelines described above for the triathlon at issue; rather, he left the intersection at which Lautieri collided with Bae open to traffic, uncontrolled by police or volunteers, unmarked with warnings, and unmonitored. Therefore, this Court cannot say that there is no genuine dispute as to whether a failure to heed any of the triathlon industry guidelines regarding intersections, which left oncoming drivers totally unaware of the possible dangers that awaited them, constitutes gross negligence. See Chiacchia v. Lycott Environmental Research, Inc., 4 Mass. L. Rptr. 399, 1995 WL 1146824, *10 (Mass.Super.) (finding that the multiple ways in which the defendant’s investigation of certain property “failed to conform to established standards in the industry lead the court to conclude that [defendant’s] negligence in this matter [amounted] to gross negligence”).
While Bae has specifically pled negligence, and not gross negligence, this Court has considered the summary judgment motion as if a claim for gross negligence against all of the third-party defendants has been made. “Under current Massachusetts State practice there is no requirement that a complaint state the correct substantive theory of the case.” Gallant v. Worcester, 383 Mass. 707, 709 (1981), citing Mass.R.Civ.P. 8(a)(2); Mass.R.Civ.P. 54 (c). Even though it is sound practice to state all possible claims, the SJC has held that “a complaint is not subject to dismissal if it would support relief on any theory of law.” Whitinsville Plaza, Inc. v. Kosteas, 378 Mass. 85, 89 (1979) (emphasis in original), citing Thompson v. Allstate Ins. Co., 476 F.2d 746, 749 (5th Cir. 1973). Thus, courts are generally “obligated to consider each of the alternative theories of law ... on which [the complaining party’s] action might be maintained.” Id. Several courts in other jurisdictions have permitted a plaintiff to proceed with a claim for gross negligence after having only pled a claim for negligence. See, e.g., McTavish v. Chesapeake and Ohio Railroad Co., 485 F.2d 510, 512 (4th Cir. 1973) (holding that Kentucky law permitted a claim of gross negligence to flow from an allegation of “negligence and carelessness”); Smith v. Hill, 510 F.Sup. 767, 775 (D.Utah 1981) (upon review of pleading and briefs court assumed that plaintiff “intended to plead that the [defendants] were grossly negligent”). Accordingly, because gross negligence may be considered an alternative theory of a standard negligence claim, Bae should be permitted to proceed with her claim of gross negligence against the third-pariy defendants. See Altman, 231 Mass, at 593 (holding that a plaintiff has the right to insist that a jury be instructed on the distinction between negligence and gross negligence at trial).
Accordingly, Fiske may be held liable for contribution to any successful claim for gross negligence that Lautieri could have made against Fiske at the time of the accident.
B. USAT
USAT argues that no duty exists between itself and the individuals who choose to participate in the triathlon. Neither the SJC nor the Appeals Court has specifically ruled on whether a duly of care is owned to participants in an athletic event by a sanctioning body of the subject sport when that race takes place on public property.
USAT argues that the reasoning in Gauvin v. Clark, 404 Mass. 450 (1989), compels the application of a recklessness standard in the present case. In Gauvin, the SJC held that “personal injury cases arising out of an athletic event must be predicted on reckless disregard of safety,” on grounds that “[vigorous and active participation in sporting events should not be chilled by the threat of litigation.” Id. at 454, citing Kabella v. Bouschelle, 100 N.M. 461, 465 (1983). The Gauvin case is not controlling here. Bae is not seeking to hold another participant in the triathlon responsible for Lautieri’s injuries. Instead, he is seeking damages from those who organized and sanctioned the event.
Whether a defendant owed a duly of care to the plaintiff is a question of law. O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000). In order for Lautieri to establish that USAT owed him a duty of care at the time the accident occurred, Lautieri would have to establish that such a duty has a “source existing in social values and customs,” Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989), or that USAT voluntarily, or for consideration, assumed a duty of care to Lautieri. Mullins v. Pine Manor College, 389 Mass. 47, 52-53 (1983). This is a burden that Lautierior, more appropriately, Bae, standing in Lautieri’s shoescannot meet. The only involvement of USAT with the subject triathlon was its approval of Fiske’s application, which, in essence, effectively permitted Fiske to be eligible for insurance coverage from the USAT Triathlon liability policy. There is no evidence in the record that suggests that USAT had any obligation or was expected to participate in the planning, operation, or supervision of the race, much less have a representative attend the Wet ‘N’ Wild triathlon. Accordingly, there is no basis on which to conclude that USAT owed Lautieri a duty of care. Assuming, arguendo, that USAT did owe a duty of care to Lautieri, the summary judgment record is devoid of any evidence that would permit a finder of fact to conclude that USAT acted with gross negligence with regard to Lautieri or the subject triathlon. Therefore, summary judgment in favor of third-parly defendant USAT must be allowed.
C. Boys and Girls Clubs of Metrowest, Inc.
A similar finding regarding the B&G Clubs is mandated. While there is evidence that the B&G Clubs *8 provided volunteers for the triathlon, there is no evidence to support a claim of gross negligence against the B&G Clubs or any of its members. Thus, the waivers are operative to release the B&G Clubs from liability. Accordingly, summary judgment for the third-party defendant B&G Clubs must also be allowed.
ORDER
For the foregoing reasons, USA Triathlon, Inc’s and Boys and Girls Clubs of Metrowest, Inc.’s motions for summary judgment are ALLOWED, and, accordingly, judgment shall enter for the third-party defendants on Counts I and III of the third-party complaint, as they relate to claims of contribution, and on Counts I, II, and III of the third-party complaint, as they relate to indemnification. William Fiske, d/b/a Fiske Independent Race Management’s motion for summary judgment on Count II of the third-party complaint is DENIED as it relates to a claim for contribution.

 Bae’s complaint uses the spelling “Fisk” in the caption. As all the parties, including Bae, have since used the spelling “Fiske,” this Court will use the latter spelling.

 Bae initially also claimed a duty of indemnification, but has since stipulated that no privity of contract existed between himself and any of the third-party defendants, and, therefore, that no right of indemnification exists.

 In McGrath, where a plaintiffs failure to comply with the particular jurisdictional requirements of G.L.c. 258, §4 was held not sufficient to bar a right of contribution, the SJC noted that the “contribution statute is aimed at eliminating the unfairness of allowing a disproportionate share of a plaintiffs recovery to be borne by one of several joint tortfeasors.” 397 Mass, at 777-78. The third-party defendants in the instant case, however, are not claiming a lack of jurisdiction, but instead that the plaintiffs signature on certain waivers releases them from all liability. The SJC has approved the denial of the right of contribution in similar cases. See O'Mara, 359 Mass, at 238 (denying contribution to defendant company from the driver of car in which plaintiff was a passenger when company truck hit driver’s car); Liberty Mutual Ins. Co., 374 Mass, at 526 (denying contribution of plaintiffs employer for work related injury on grounds that the employer’s contributions to workers’ compensation benefits released the employer from all tort claims that might have resulted from the accident).

 William Fiske used the name “Fiske Independent Race Mgt.” and “F.I.R.M” on the 2000 USA Triathlon Event Sanction Application regarding the Wet ‘N’ Wild Triathlon. Since there is no evidence in the record that “Fiske Independent Race Mgt.” or “F.I.R.M” are incorporated entities, or that William Fiske filed a business certificate in Massachusetts under these names, William Fiske is not afforded any legal protection by virtue of the use of these fictional business entities. See Pedersen v. Leahy, 397 Mass. 689, 691 (1986).

 “Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances. It is a want of diligence commensurate with the requirement of the duty at the moment imposed by the law.
“Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence ... It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injure.” Altman, 231 Mass, at 591-92.