Krupp, Peter B., J.
Plaintiff Amy Dugan (“Amy”) brings this action for negligence (Count I) following injuries she sustained playing field hockey for her coach, defendant Erin Cash (“Cash”), at her school, defendant Thayer Academy (“Thayer”). Her parents bring a claim for loss of consortium due to Amy’s injuries (Count II).[3] Amy’s coach and school now move for judgment on the pleadings on both counts, arguing that because Amy chose to play in a competitive sporting event, plaintiffs may only pursue tort claims against them upon an allegation that they engaged in willful, wanton or reckless conduct. For the reasons that follow, the motion is DENIED.
BACKGROUND
Under the Rule 12(c) standard, I accept as true the allegations in the complaint, which may be summarized as follows.
In October 2011, Amy was a high school junior at Thayer and a member of the school’s varsity field hockey team (“the team”). Cash, a paid employee of Thayer, was hired as head coach of the team.
On October 7, 2011, the team played a game in Concord, New Hampshire. During that game, Amy was hit in the head by a field hockey ball and suffered a head injuiy and/or a concussion. Cash witnessed the incident, but did not attempt to determine whether Amy had suffered a concussion or other injuiy as a result and did not remove Amy from the game. At no time during or after the game did Cash ask Amy if she had any symptoms related to the head injury or communicate the nature of the injuiy to Amy’s parents, Thayer’s athletic director or school nurse, or any medical professional.
Amy attended the team’s practice on October 11, 2011 although she had not been evaluated by, or received clearance from, a duly licensed medical professional following her October 7, 2011 head injury.
On October 12, 2011, the team played a home game against Groton Academy. Cash allowed Amy to play despite the fact that Amy had not been evaluated by, or received clearance from, a medical professional. During the game, Amy was struck in the head in a collision with an opposing player. Cash witnessed this injury, too, but again did not try to determine whether Amy had suffered injuiy as a result and did not remove Amy from the game. At no time during or after this game did Cash ask Amy if she had any symptoms due to the collision, or communicate the nature of this second injuiy to Amy’s parents, Thayer’s athletic director or school nurse, or any medical professional.
The two injuries together resulted in serious injuries to Amy and “have changed her life forever.”
At the time of Amy’s injuries, Massachusetts law required schools and coaches, among others, to take steps to prevent their players from suffering, or from exacerbating the adverse impacts of, head injuries. See G.L.c. 111, §222;[4] 105 C.M.R. §§201.001— 201.017. Thayer had also implemented its own concussion management protocol. Thayer’s protocol called for the involvement and evaluation by a primary care physician, notification of parents, and action by an athletic trainer or nurse. Plaintiffs allege Thayer failed to train and supervise Cash properly.
Plaintiffs filed this action on October 7, 2014, exactly three years after Amy’s initial head injury. They allege Thayer and Cash breached duties owed to them causing them injuiy, but do not allege defendants acted recklessly, wantonly, or intentionally.
DISCUSSION
Rule 12(c)
A defendant’s motion under Rule 12(c) “is actually a motion to dismiss [that] argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002) (quotation omitted). “Judgment on the pleadings may be entered if a plaintiff fails to present sufficient facts in the complaint to support the legal claims made.” Flomenbaum v. Commonwealth, 451 Mass. 740, 742 (2008). The Appeals Court has recently summarized the standard:
The effect of a motion for judgment on the pleadings is to challenge the legal sufficiency of the complaint. For purpose of the court’s consideration of the rule 12(c) motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false. The court can also consider facts of which judicial notice may be taken.
Home Depot v. Kardas, 81 Mass.App.Ct. 27, 28 (2011) (quotations and citations omitted).
Tort Liability of a Player’s Own Coach
Personal injuiy litigation arising from organized sports raises unique issues. While courts have recognized — as do the rules of sports themselves — that “some of the restraints of civilization must accompany eveiy athlete on to the playing field,” they have also been mindful that “[v]igorous and active participation in sporting events should not be chilled by the threat of litigation.” Gauvin v. Clark, 404 Mass. 450, 454 (1989), quoting Nabozny v. Barnhill, 31 Ill.App.3d 212, 215 (1975), and Kabella v. Bouschelle, 100 N.M. 461, 465 (1983). The Supreme Judicial Court has reconciled these two competing principles by requiring players injured on the field during a sporting event to prove recklessness in order to pursue a personal injury claim against an opposing team’s player or coach. Kavanagh v. Trustees of Boston Univ., 440 Mass. 195, 205 (2003) (“liability only where a[n opposing] coach’s *659 behavior amounts to at least recklessness”); Gauvin, 404 Mass. at 454 (personal injury claim against opposing player “must be predicated on reckless disregard of safety”). See also Gray v. Giroux, 49 Mass.App.Ct. 436, 438-39 (2000) (applying recklessness standard to golfer’s claim of injury from a golf ball hit by another member of her foursome during a golf tournament); Goodwin v. Youth Sports Ass’n Purchasing Grp., 12 Mass. L. Rptr. 655, 2001 WL 128442 at *5 (Feb. 14, 2001) (Agnes, J.) (“no reason to suppose that players who voluntarily associate themselves with a non-professional, sporting competition, such as the coaches game involved in this case, have an expectation that the organizers or sponsors owe them any greater duties than their fellow players”).
Defendants now ask me to apply the same recklessness standard to a claim against a player’s own coach. The issue was expressly left open in Kavanagh, 440 Mass. at 201-03, and has not been addressed by any Massachusetts appellate court since. For several reasons, that standard is inapplicable in the present case.
The duties of a coach to her own players is different from the duties of a coach to the players on the opposing team. The Supreme Judicial Court adopted the heightened burden of proof for claims against an opposing player or opposing coach to prevent the ordinary negligence standard from decreasing the intensity of competition. In sport, we expect competing teams, coaches and players to strive mightily and within the rules to win. If a player or coach had to think about using reasonable care in competing with an opposing player or team, they might recoil from contact or physical play (or encouragement of such conduct) out of fear of liability.
In contrast to the opposing player and coach, a player’s own coach must think about winning to be sure, but must also look out for and safeguard her own team’s and her own players’ best interests. While the fact that a coach is acting in an athletic competition may affect what the duty of care requires in a game-time setting, the better authority indicates that a player’s own coach must exercise that degree of care of a reasonably prudent coach (i.e. the negligence standard) and may face liability without proof of recklessness. In Massachusetts, in cases involving equipment supplied by a player’s own coach, the court has found the negligence standard applicable. See, e.g., Everett v. Bucky Warren, Inc., 376 Mass. 280, 287-88 (1978) (coach provided player with defective helmet); Moose v. Massachusetts Inst. of Tech., 43 Mass.App.Ct. 420, 425 (1997) (coach provided player with improper training pole for student pole vaulter’s weight). Other jurisdictions have similarly found the negligence standard applicable to “own coach” liability. See, e.g., Limones v. School Dist. of Lee Cnty, 2015 WL 1472236 at *4 (Fla. Apr. 2, 2015) (school owes home and visiting student athletes duty of supervision, duty to act -with reasonable care, “duty to take appropriate post-injuiy efforts to avoid or mitigate further aggravation of [ ] injury”); Avila v. Citrus Cmty. Coll. Dist., 38 Cal.4th 148, 162 (2006) (host school and agents owe duty to home and visiting players not to increase risk inherent in sport); Cerny v. Cedar Bluffs Junior/Senior Pub. Sch., 267 Neb. 958, 967 (2004) (where football player alleged he suffered head injury due to his coach’s negligence, standard of care is “that of a reasonably prudent person holding a Nebraska teaching certifícate with a coaching endorsement”); Zmitrowitz v. Roman Catholic Diocese of Syracuse, 274 A.D.2d 613, 615 (N.Y.App.Div. 2000) (coaches “must exercise ordinary reasonable care to protect student athletes voluntarily involved in extracurricular sports from unassumed, concealed or unreasonably increased risks”); Rosania v. Carmona, 308 N.J.Super. 365, 373-74 (N.J.Super.A.D. 1998) (same); Wagenblast v. Odessa Sch. Dist. No. 105-157-166J, 110 Wash.2d 845, 856 (1988) (school district owes duty to students engaged in interscholastic sports to employ ordinary care and anticipate reasonably foreseeable dangers; “[a]s a natural incident to the relationship of a student athlete and his or her coach, the student athlete is usually placed under the coach’s considerable degree of control”); Lueck v. City of Janesville, 57 Wis.2d 254, 262-63 (1973) (teacher/instructor owed student injured in gymnastics accident ordinary duty of care).
The parties cite me to two decisions from the Superior Court reaching opposite results. In Capua v. Town of North Reading, ESCV2004-759-D, slip op. (Nov. 10, 2004), Judge Whitehead found the recklessness standard “ought to apply” to a claim by the North Reading High School’s girls varsity soccer team’s goalie against school officials and coaches who organized a scrimmage between the town high school boys and girls soccer teams. Judge Whitehead found that the school defendants in that case were “analogous in function to the nonprofit association, an organizer and sponsor of athletic events" addressed in Judge Agnes’s decision in Goodwin v. Youth Sports Ass’n, Capua, slip op. at 6, and concluded that the argument could not stand that allowing the girls team to scrimmage against the boys team “was, in itself, a violation of the standard of care ... in the face of existing case law.” Id., slip op. at 8.
In Torres v. Univ. of Massachusetts, 20 Mass. L. Rptr. 310, 2005 WL 3629285 (Dec. 19, 2005), Judge Billings was faced with a case involving a cheerleader injured while practicing a high-risk move without adequate spotters. Judge Billings found the rationale of Gauvin and Kavanagh was not implicated because the plaintiff “was not engaged in competition at the time of her accident,” and because “the supervision she advocates would not interfere with the activity she was engaged in, even had it been at a game or a cheerleading competition.” 2005 WL 3629285 at *2. Judge Billings did not read the Supreme Judicial *660 Court to be “suggesting that willfulness, wantonness or recklessness must be shown in every accident that takes place in or around a sporting event.” Id.
I agree with Judge Billings’s reading of the Supreme Judicial Court’s decisions. Simply because the alleged tortious conduct occurred in connection with the conduct of a sport does not mean the recklessness standard must apply. This case fundamentally involves allegations involving failure to obtain medical evaluation and care, not the manner and means of competition. Nothing in the heat of competition should release a coach of the obligation to assure a player’s fitness to engage in the particular type of competition or to secure medical assistance as may be needed. Nor should a coach be relieved of the duly to use ordinary care in the sober evaluation between games of whether a player is fit to take the field.
Plaintiffs allege Amy’s coach and school were negligent in failing to have her evaluated after her initial head injury; failing to report the nature of her injury afterwards to her parents, medical professionals, or other school officials; and permitting her, without prior evaluation, to play in the second game during which time she was reinjured. These actions did not occur in the context of competition, but after the game on October 7, 2011, and before the game on October 12, 2011. The mere fact that they involved a sport, or the judgment, actions or omissions of a coach, does not bring them within the rationale of the decisions in Gauuin and Kavanagh.
ORDER
Defendant’s Partial Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Docket #5.0) is DENIED. The period to complete discovery shall be extended through November 13, 2015. No party shall expect any further extensions of the discovery period. The Court shall conduct a Final Pretrial Conference on December 15, 2015 at 2 p.m.

 Plaintiffs also assert a claim for breach of contract. That claim is not before me on the pending motion.

 G.L.c. 111, §222, which applies at least to “all public schools and any school subject to the Massachusetts Interscholastic Athletic Association mies,” id. §222(a), states, among other things: “If a student suffers a concussion as diagnosed by a medical professional, or is suspected to have suffered a concussion while participating in an extracurricular athletic activity, the student shall not return to the practice or competition during which the student suffered, or suspected to have suffered, a concussion and shall not participate in any extracurricular athletic activity until the student provides written authorization for such participation, from a licensed physician, licensed neuropsychologist, certified athletic trainer or other appropriately trained or licensed health care professional as determined by the department of public health, to the school’s athletic director.” Id. §222(c), para. 2. Even if this statute does not apply to Thayer, id. §222(a), or does not establish an independent cause of action for its violation, id. §222(f), neither issue I need decide, the statute likely affects the duty, of care a coach owes to her players to prevent head trauma.