JUDITH GRAY *vs.* JAMES GIROUX.

No. 98-P-1148.

Middlesex. February 23, 2000. - June 16, 2000.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Practice, Civil,* Summary judgment. *Wilful, Wanton, or Reckless Conduct.*

This court concluded that, in a negligence action arising from an injury
received by a participant in a game of golf, a noncontact sport, the ap-
propriate standard of care was not ordinary negligence, but whether the
defendant acted with wilful, wanton, or reckless disregard for the safety of
other players. [438-439]

That a golfer's shot did not follow its intended course, striking another player
whom the golfer did not see and who was not in the intended path of the
shot, did not amount to wilful, wanton, or reckless conduct; in a negligence
action brought by the injured player, summary judgment was appropriately
entered for the defendant golfer. [439-440]

CIVIL ACTION commenced in the Superior Court Department on
July 15, 1996.

On transfer to the Waltham Division of the District Court
Department, a motion for summary judgment was heard by *Ja-
net L. Sanders*, J., and, on appeal to the Superior Court Depart-
ment, the case was heard by *Sandra L. Hamlin*, J., on a motion
for summary judgment.

*Judith L. Gray*, pro se.

*Matthew W. Perkins* for the defendant.

SMITH, J. On July 15, 1996, the plaintiff, Judith Gray, filed a
complaint in the Superior Court against the defendant, James
Giroux, alleging that, while the parties were playing a game of
golf, the defendant "negligently and carelessly played his ball,
causing it to strike the [p]laintiff in the head, . . . thereby caus-
[ing] her serious bodily injury." The defendant filed an answer
and a judge of the Superior Court subsequently remanded the
complaint to the District Court.

On September 17, 1997, the defendant filed a motion for

summary judgment in the District Court claiming that the appropriate standard of care was wilful, wanton, or reckless conduct and that his actions did not rise to that standard as a matter of law. In response, the plaintiff claimed that the appropriate standard was ordinary negligence. The District Court judge agreed with the defendant and ruled that (1) the "wilful, wanton, or reckless" standard of care applied to injuries resulting from all athletic events, including the game of golf, and (2) the undisputed facts did not indicate that the defendant's conduct violated that standard.

On October 24, 1997, the plaintiff filed a notice of appeal to the Superior Court for a trial by a jury. After the case was transferred, the defendant again filed a motion for summary judgment on the same grounds as his previous motion in the District Court. The plaintiff opposed the motion, claiming once again that the appropriate standard was negligence and not wilful, wanton, or reckless conduct. She also claimed that summary judgment should be denied because there were genuine issues of material fact.

A Superior Court judge allowed the defendant's summary judgment motion ruling that (1) there were no genuine issues of material fact; (2) the appropriate standard as to liability for injuries caused by participants in a golf game is wilful, wanton, or reckless conduct; and (3) the defendant's conduct did not rise to that standard. The plaintiff appealed the order granting summary judgment.

1. *Facts*. The undisputed portion of the record before the motion judge, viewed in the light most favorable to the plaintiff, establishes the following material facts. On August 14, 1993, the plaintiff and her husband were participating in a golf tournament at the Marlborough Country Club. The defendant and his wife were playing in the plaintiff's group.

At the ninth hole, which was a "dogleg" slightly to the right,[1] the plaintiff's husband hit his golf ball into the woods on the left side of the fairway. While he searched for the missing ball, the plaintiff stood near the edge of the woods (although still on the fairway) in an effort to assist him.[2] The plaintiff initially saw the defendant approximately thirty-five to fifty yards behind

---

[1]The defendant explains that a "dogleg" is a golf hole in which the fairway between the tee and green is curved to either the left or the right.

[2]The motion judge found that the plaintiff was standing in the woods and not on the fairway at the time she was struck by the ball. That finding was

her, standing near his ball, which was in the rough on the left side of the fairway. The plaintiff did not see the defendant actually hit the ball because she was, at that time, focused on helping find her husband's ball.

The defendant, an experienced golfer, did not call out a warning either before or after taking his shot. That shot hit the plaintiff in the head, thereby causing her injuries.

2. *Standard of review.* Summary judgment is appropriate where there is no genuine issue of material fact, and when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). "[A] party moving for summary judgment in a case in which the opposing party [has] the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

3. *The appropriate standard of care.* The motion judge cited *Gauvin* v. *Clark*, 404 Mass. 450, 454 (1989), in support of her decision relative to the standard of care. In *Gauvin*, the court was called upon to rule on the appropriate standard of care where the defendant, a participant in a hockey game, violated a safety rule and caused injuries to the plaintiff. The court held that a participant in an athletic event can be liable to another participant only when his or her actions amount to a wilful, wanton, or reckless disregard for the safety of the other participant. The court decided to adopt that standard because it promoted the policy that "[v]igorous and active participation in sporting events should not be chilled by the threat of litigation." *Ibid.*, quoting from *Kabella* v. *Bouschelle*, 100 N.M. 461, 465 (1983).

We recognize that golf differs from hockey, which is a sport where contact with other participants is part of the game.

_____

incorrect because, in her deposition, the plaintiff stated that she was on the edge of the woods but still on the fairway when she was hit by the ball. See *Hanover Ins. Co.* v. *Leeds*, 42 Mass. App. Ct. 54, 56 (1997) (in reviewing grant of summary judgment, evidence is viewed in light most favorable to nonmoving party). The judge's mistake, however, does not change the result we reach in this matter.

However, there does not appear to be any language in *Gauvin* that would foreclose the application of the wilful, wanton, or reckless standard to noncontact sports such as golf.

We note that the majority of courts that have considered this issue have adopted the wilful, wanton, or reckless standard in noncontact sports based on the same policy reasons cited in *Gauvin*, i.e., that promotion of vigorous participation in athletic activities would be threatened by a flood of litigation if the standard were ordinary negligence.[3] We agree and hold that, based upon the policy reasons supporting the *Gauvin* decision, the wilful, wanton, or reckless standard of conduct, and not ordinary negligence, is the appropriate standard of care in noncontact sports such as golf.

4. *The defendant's conduct and the wilful, wanton, or reckless standard.* Wilful, wanton, or reckless conduct has been

[3]The decisions in other jurisdictions that have determined that the wilful, wanton, or reckless standard of conduct is the appropriate standard of care for noncontact sports encompass a variety of activities from informal children's games to team sports. Some of the decisions rest on the concept that participants in such sports assume the risk of injury; that defense, however, was abolished in Massachusetts in 1973. See G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, § 1. However, most of those decisions also rely on the basic policy reasons underlying the *Gauvin* decision.

See *Jaworski* v. *Kiernan*, 241 Conn. 399, 402 (1997) (participant in a co-ed recreational soccer match cannot recover for injuries sustained after opponent made contact with her during the course of play); *Picou* v. *Hartford Ins. Co.*, 558 So. 2d 787 (La. App. 1990) (relief denied after player injured in a collision with an opponent during a softball game); *Ritchie-Gamester* v. *Berkley*, 461 Mich. 73, 87-89 (1999) (ice skater unable to recover damages after a twelve year old allegedly ran into her, knocking her to the ground and causing a serious knee injury); *Ross* v. *Clouser*, 637 S.W.2d 11, 13-14 (Mo. 1982) (plaintiff denied damages after being knocked down during play in a softball game); *Dotzler* v. *Tuttle*, 234 Neb. 176, 179 (1990) (participant denied relief after being injured in a collision with another player during a "pick-up" basketball game); *Crawn* v. *Campo*, 136 N.J. 494, 503 (1994) (catcher unable to recover for injuries resulting from a collision at home plate during an informal softball game); *Marchetti* v. *Kalish*, 53 Ohio St. 3d 95, 99-100 (1990) (child whose leg was broken in a game of "kick the can" cannot recover damages from playmate when she was unable to produce evidence that the other participant's actions were either "reckless" or "intentional"). See also *Lilley* v. *Elk Grove Unified Sch. Dist.*, 68 Cal. App. 4th 939, 943 (1998) (wrestling); *Bjork* v. *Mason*, 77 Cal. App. 4th 544, 549-550 (2000); *Pressler* v. *U*, 70 Ohio App. 3d 204, 206 (1990) (yachting). Contrast *Zurla* v. *Hydel*, 289 Ill. App. 3d 215, 218-221 (1997) (court distinguished between contact and noncontact sports and ruled that golf was a noncontact sport subject to the ordinary negligence standard of conduct).

defined as "intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." *Manning* v. *Nobile*, 411 Mass. 382, 387 (1991), quoting from *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990). The Supreme Judicial Court has stated that "reckless conduct involves a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in kind." *Sandler* v. *Commonwealth*, 419 Mass. 334, 337 (1995).

Here, the undisputed facts demonstrate that the plaintiff was standing at the edge of the woods on the left side of the fairway about thirty-five to fifty yards in front of the defendant, whose ball was in the rough on the same side. Because the hole was a dogleg to the right, and the plaintiff and the defendant were both on the left side of the fairway, the defendant obviously was not aiming his shot toward the edge of the woods where the plaintiff was standing; instead, he was trying to place the ball on the green to the right. Thus, the plaintiff was not within the intended path of the defendant's shot. Moreover, it is undisputed that the defendant did not see the plaintiff before he took his shot.[4] In these circumstances, the fact that the defendant's shot did not follow its intended path does not amount to wilful, wanton, or reckless conduct.[5]

Therefore, because the plaintiff has no reasonable expectation of proving an essential element of her case, see *Kourouvacilis* v. *General Motors Corp.*, *supra* at 716, summary judgment was appropriate.

*Judgment affirmed.*

---

[4]The defendant testified at deposition that he did not see the plaintiff. The plaintiff adopted this position in the proceedings below. Although in her appellate brief the plaintiff now argues that "the defendant could have and should have been able to see the plaintiff," and casting aside the fact that this assertion is made for the first time on appeal, the plaintiff has offered no "countervailing materials" to rebut the defendant's deposition testimony. See *Metropolitan Credit Union* v. *Matthes*, 46 Mass. App. Ct. 326, 330 (1999).

[5]The plaintiff's claim that there were genuine issues of material fact is without merit. She alleges in her brief — but not in her complaint — that she believes the defendant consumed alcohol before playing golf. However, there is no support in the record for this allegation. We have resolved the other claimed material facts in the plaintiff's favor and we hold that they do not change the result we have reached.