The plaintiff Matias appeals from a summary judgment dismissing his complaint. "Summary judgment is appropriate where there is no genuine issue of material fact, and when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." Gray v. Giroux, 49 Mass. App. Ct. 436, 438 (2000). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). "We review the judge's order granting summary judgment under the familiar standard: We view the evidence in the summary judgment record in the light most favorable to the nonmoving party, in this case the plaintiffs, and we review de novo the judge's conclusion that summary judgment was appropriate." Cosgrove v. Hughes, 78 Mass. App. Ct. 739, 743 (2011).
It is undisputed that Matias was arrested on drug-related charges in October, 2000. In connection with that arrest the police seized from Matias $395,744. Shortly thereafter Matias, while driving, was arrested after he failed to stop for a police officer; the police found in Matias's car and seized an additional $60,500, bringing the total seized from Matias to $456,244. Matias retained Ricciardi, an attorney, to represent him in the ensuing criminal and civil forfeiture proceedings. Ricciardi, on Matias's behalf, filed motions to suppress certain evidence in the criminal matter. The matter was heavily litigated. The trial judge ordered the evidence suppressed, and the case ultimately ended up before the Supreme Judicial Court, which concluded that the trial judge's suppression order was unwarranted. Commonwealth v. Matias, 440 Mass. 787, 795 (2004).
In 2004, after the Supreme Judicial Court's decision entered, Matias pleaded guilty to possession of marijuana with intent to distribute; Matias was sentenced to two years supervised probation. Matias also resolved the civil forfeiture matters by executing two written agreements for judgment. Relevant here, these agreements, considered together, specify that the Commonwealth would return to Matias a total of $106,946 of the $456,244 seized, with the balance to be retained by various law enforcement entities. After Matias executed the agreements the Commonwealth turned $106,946 over to Ricciardi. Ricciardi, in turn, distributed $60,500 to Matias and kept for himself $46,446.
Matias now asserts, in essence, he was unaware that Ricciardi had kept for himself $46,446 or that the Commonwealth returned a total of $106,946 to him. Matias goes on to assert that he could not have known the true state of affairs in 2004 because Ricciardi never showed Matias the relevant agreement for judgment-instead putting before Matias only that agreement's signature page, which contains no terms or conditions-and because Ricciardi misrepresented to Matias that the Commonwealth was returning to him only $60,500. As the motion judge explained,
"Plaintiff has stated under oath that he never saw anything other than the signature pages of the Agreements for Judgment, which signature pages, he claims, Attorney Ricciardi had him sign, along with a written of waiver of rights, at his plea hearing. He claims that the Defendant falsely led him to believe that the total amount to be returned to the Plaintiff was only $60,500.00."
Finally, Matias claims he only learned of Ricciardi's fraud and concealment in 2012 when, in the course of an attempt to have his 2004 guilty plea set aside, a different attorney representing Matias discovered the 2004 agreements.
By contrast, Ricciardi maintains that he and Matias explicitly discussed and agreed that Ricciardi would keep $46,446 of the returned cash as his fee for representing Matias in the criminal and civil forfeiture proceedings, pointing out that Matias admittedly signed both agreements for judgment. Matias disputes this. We do not see any written documentation in the record before us, such as a retainer or fee agreement or even a contemporaneous confirmation letter, supporting Ricciardi's position. Neither do Matias's initials or signature appear on the relevant page of the relevant agreement, which conceivably could have served as conclusive proof that Matias in fact had the full agreement before him and had at least an opportunity to read it. Neither do we see any indication in the plea colloquy or otherwise that either the amounts to be returned to Matias or the purported oral fee agreement was ever memorialized in any way.
Accordingly, while we express no opinion on the facts asserted by the parties, we concur with the motion judge that whether Ricciardi and Matias agreed that Ricciardi could retain the $46,446, or even whether Matias in fact was aware in 2004 that the Commonwealth returned a total of $106,946 to him, constitute genuinely disputed issues of fact that may not be resolved on summary judgment. Compare Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 522 (1997) (although investors signed documents, those documents did not demonstrate that investors knew documents' contents where investors testified they had not read them "because of the express trust they placed in" attorneys).
Although this was the motion judge's conclusion, the judge nonetheless dismissed Matias's complaint on Ricciardi's summary judgment motion, generally reasoning that because the 2004 agreements for judgment were public records Matias's alleged injury was not "inherently unknowable" and the so-called discovery rule did not toll the applicable limitations period. Accordingly, the judge ruled, the three-year tort statute of limitations provided by G. L. c. 260, § 2A, ran long before Matias filed this action in 2014.
In the usual case, a claim accrues, and the statute of limitations will begin to run, when the injured party reasonably could have known of her injury. Bowen v. Eli Lilly & Co., 408 Mass. 204, 206 (1990). Koe v. Mercer, 450 Mass. 97, 101 (2007). But "[w]here a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment" within the meaning of G. L. c. 260, § 12. Hays v. Ellrich, 471 Mass. 592, 602 (2015), quoting from Demoulas, 424 Mass. at 519. "In these cases, the statute of limitations clock begins to run only when the plaintiff has 'actual knowledge ... of the facts giving rise to his cause of action,' i.e., the facts which the fiduciary had failed to disclose." Ibid., quoting from Patsos v. First Albany Corp., 433 Mass. 323, 329 n.11 (2001). "[T]he actual knowledge standard recognizes the dependent status of the beneficiary vis-a-vis the fiduciary, and protects the beneficiary's legitimate expectation that the fiduciary will act with the utmost probity in all matters concerning the relationship.... Actual knowledge of injury suffered at a fiduciary's hands ... sets the ... statute of limitations in play." Doe v. Harbor Schs., Inc., 446 Mass. 245, 255-257 (2006).
Without belaboring the point, Ricciardi, an attorney retained by Matias to represent Matias in both criminal and civil forfeiture proceedings, was Matias's fiduciary, Dunne v. Cunningham, 234 Mass. 332, 335 (1920), who owed Matias "[u]nflinching fidelity." Pollock v. Marshall, 391 Mass. 543, 555 (1984), quoting from Berman v. Coakley, 243 Mass. 348, 354 (1923). At least according to Matias, Ricciardi nonetheless (i) misrepresented to Matias that Matias was to receive from the Commonwealth only $60,500 when in fact it was $106,946; (ii) failed to disclose to Matias material facts, namely, that Matias was to receive a total of $106,946; and (iii) retained for himself without notice or consent $46,446 rightfully due Matias. In such circumstances, we ask not when Matias, in the exercise of reasonable diligence, could have discovered his injury but rather when Matias, in fact, discovered his claimed injury.
As discussed above, and as the motion judge specifically found, the question of when, in fact, Matias knew of his alleged injury is genuinely disputed, and not subject to resolution on summary judgment. As such, and solely for the purpose of considering Ricciardi's summary judgment motion, Matias's claim that he first discovered his alleged injury in 2012, a date within the applicable limitations period, must be accepted. The judgment therefore is reversed, and the case is remanded for further proceedings consistent with this memorandum and order.
So ordered.
Reversed and remanded.