NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1189                                          Appeals Court

BROOKE A. BRANDT  vs.  JACLYN DAVIS & others.[1]


No. 19-P-1189.

Suffolk.     May 22, 2020. - November 2, 2020.

Present:  Wolohojian, Maldonado, & Ditkoff, JJ.


Negligence, Athletics, College, Gross negligence, Standard of
     care.  Contract, Release from liability, Waiver.  Release.
     Wilful, Wanton, or Reckless Conduct.  Practice, Civil,
     Waiver, Summary judgment.  Waiver.



     Civil action commenced in the Superior Court Department on
March 1, 2017.

     The case was heard by Mark C. Gildea, J., on motions for
summary judgment.


     Robert A. Curley, Jr., for the plaintiff.
     Robert B. Smith for Jaclyn Davis & another.
     Paul F. Lynch for Meredith Ball.


     DITKOFF, J.  The plaintiff, Brooke A. Brandt, appeals from

a summary judgment dismissing her complaint against her softball

teammate, Meredith Ball (teammate), and Suffolk University and

_____

     [1] Meredith Ball and Suffolk University.

her softball head coach Jaclyn Davis (collectively, the Suffolk defendants), arising out of the plaintiff's injuries sustained during softball practice.  We conclude that, like players in an athletic contest, players in an athletic practice owe a duty not to engage in reckless conduct but are not subject to suit for simple negligence.  Because of a waiver signed by the plaintiff, the Suffolk defendants are liable only for gross negligence or recklessness.  Concluding that the summary judgment record did not raise a triable issue that either the teammate or the Suffolk defendants engaged in reckless conduct or gross negligence, we affirm.

1.  Background.  The plaintiff played softball as a member of the Suffolk University women's team, a National Collegiate Athletic Association Division III team.  As a condition of her participation on the team, the plaintiff signed a participant waiver and release of liability form.  The waiver released Suffolk University and its employees and agents from liability for any claims arising from her participation in the athletic program to the extent "permitted by the law of the Commonwealth of Massachusetts."

On the day of the accident, the team was practicing in an indoor practice facility.  The team engaged in the same general pattern of activities during practices.  After warming-up, the team would leave the playing area to get their equipment, and

then meet on the field. The players had to leave the playing area to get their equipment, because they hung their equipment outside the playing area on a fence. During their practices, the players would run through a series of rotating stations to develop different skills, each requiring different personal equipment. Before the players began their next station, the head coach would say "go" when she was sure everyone was in position and wearing the proper equipment.

Typically, the batting tees would be set up in batting cages, but they were not on the day of the accident. Moveable screens were available to use as protective barriers, but there was no such barrier between the tees and the field entrance on the day of the accident.

At one of the practice stations, players practiced hitting balls off tees into the netting surrounding the field. The tees were placed off to one side of an opening in the netting, which is where players would enter the area. A portable divider was placed on the opposite side of the opening to separate this station from the live hitting station. The players rotated among stations at the direction of the coaches, and were given between two and five minutes to transition before the coaching staff signaled them to start.

During the March 7, 2014, practice, when it was time for the plaintiff to rotate to the live hitting station, she left

the field to retrieve her batting helmet and began jogging back with her helmet in her hand. The plaintiff testified in a deposition that she had to go retrieve her batting equipment, because her first station had been fielding. The plaintiff was "moving quickly" to get back to her station.

When the plaintiff returned to the practice area, the teammate was practicing hitting at the "last tee near the door. [The teammate] was the last to get to [her] tee because of the additional time [she] spent practicing [her] footwork." The teammate was a left-handed batter, and she chose the tee nearest to the door so that the right-handed players in the station would not be within her swinging radius.

In her deposition, the plaintiff testified that she saw that the teammate had a bat in her hand at the tee station and was preparing to bat. The teammate's back was to the plaintiff when the plaintiff jogged back on the field. The plaintiff did not know whether the teammate could see her because the teammate's batting helmet limited her peripheral vision. The plaintiff testified that she saw the teammate's face, but could not say whether that was when she was leaving the field or upon reentering it. She "didn't feel like [she] was going to get hit" when she ran behind the teammate.

The plaintiff testified that she yelled, "Wait." However, she could not remember when she said wait or even whether she

said it out loud. She admitted that it was possible that she "said wait only in [her] own head."

The teammate testified in a deposition that she did not begin swinging until instructed to do so by her coaches, and an assistant coach testified that the players were already swinging before the accident. The teammate stated that she "always look[ed] around . . . before . . . every single swing." She did not see the plaintiff.

After the teammate hit the ball off the tee, the teammate's swing hit the plaintiff in the back of the head. As a result, the plaintiff suffered a concussion and required four stitches at a hospital. She was released from the emergency department the same evening. Because the plaintiff and the teammate were best friends, the teammate stayed with the plaintiff in her dormitory room the night of the accident. A few days later, however, it became evident that the plaintiff was suffering long-term effects from the accident, including difficulty reading.

The plaintiff asserted claims against the teammate for negligence, gross negligence, and recklessness. The plaintiff asserted claims against the Suffolk defendants for gross negligence and recklessness. In a thoughtful decision, a Superior Court judge determined that the plaintiff needed to show recklessness on the part of the teammate to prevail.

Concluding that the summary judgment record did not raise a triable issue of recklessness or gross negligence on the part of either the teammate or the Suffolk defendants, the judge granted summary judgment and dismissed the plaintiff's complaint. This appeal followed.

2. Standard of review. "Our review of a motion judge's decision on summary judgment is de novo, because we examine the same record and decide the same questions of law." Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs., 484 Mass. 279, 286 (2020), quoting Kiribati Seafood Co. v. Dechert LLP, 478 Mass. 111, 116 (2017). "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 506 (2019), quoting Molina v. State Garden, Inc., 88 Mass. App. Ct. 173, 177 (2015). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). "Usually, negligence and recklessness involve questions of fact left for the jury. . . . However, where no rational view of the evidence would permit a finding of negligence or recklessness, summary judgment is appropriate." Borella v. Renfro, 96 Mass. App. Ct. 617, 622 (2019).

3.  Claims against the teammate.  a.  Standard of care.  As is well established, "participants in an athletic event owe a duty to other participants to refrain from reckless misconduct." Borella, 96 Mass. App. Ct. at 622, quoting Gauvin v. Clark, 404 Mass. 450, 451 (1989).  Accord Gray v. Giroux, 49 Mass. App. Ct. 436, 439 (2000) ("wilful, wanton, or reckless standard of conduct, and not ordinary negligence, is the appropriate standard of care in noncontact sports").  We must determine whether this standard, rather than the ordinary negligence standard, applies to participants in an athletic practice. "Whether a party owes a duty of care to another is a legal question, 'determine[d] "by reference to existing social values and customs and appropriate social policy."'"  Williams v. Steward Health Care Sys., LLC, 480 Mass. 286, 290 (2018), quoting Jupin v. Kask, 447 Mass. 141, 143 (2006).  We conclude that the same level of duty -- to refrain from reckless conduct -- applies to athletic practices as well as to athletic contests.

In Gauvin, 404 Mass. at 454, the Supreme Judicial Court determined that participants in an athletic event owe each other only a duty to avoid reckless conduct.  The court did so because it was "wary of imposing wide tort liability on sports participants, lest the law chill the vigor of athletic competition."  Id.  This standard "furthers the policy that

'[v]igorous and active participation in sporting events should not be chilled by the threat of litigation.'"  Id., quoting Kabella v. Bouschelle, 100 N.M. 461, 465 (1983).

The same reasoning applies to athletic practices.  During such practices, players train to improve their competitive performance.  Teammates often play against each other as though it is a game through scrimmages and other drills at practice.  See Gauvin, 404 Mass. at 454 ("Players, when they engage in sport, agree to undergo some physical contacts which could amount to assault and battery absent the players' consent").  Batting practice, for example, requires focus for players to increase the strength and accuracy of their swings.  If the players could not practice as vigorously as they play, they would -- at best -- be unprepared for the challenges of actual competition.  At worst, their inability to practice vigorously would expose them to an increased risk of injury during games, especially if they competed against out-of-State teams not so constrained.  See Kavanagh v. Trustees of Boston Univ., 440 Mass. 195, 205 (2003).

We find support for this conclusion in decisions in other States.  In Bowman v. McNary, 853 N.E.2d 984, 991 (Ind. Ct. App. 2006), the Indiana Court of Appeals rejected the application of ordinary negligence to an injury caused by an errant swing during a practice for a high school golf team.  See id. at 992

("the rule applies to injuries sustained by any co-participants in a sporting activity, which would include teammates injured during a practice").[2]  Moreover, other jurisdictions have applied the recklessness standard for noncontact or noncompetitive athletic activities.  See, e.g., Ford v. Gouin, 3 Cal. 4th 339, 345 (1992) ("the general rule limiting the duty of care of a coparticipant in active sports to the avoidance of intentional and reckless misconduct, applies to participants engaged in noncompetitive but active sports activity, such as a ski boat driver towing a water-skier"); Pressler v. U, 70 Ohio App. 3d 204, 205-206 (1990) (yacht race).  Accord Ritchie-Gamester v. Berkley, 461 Mich. 73, 89 (1999) (declining to apply ordinary negligence where ice skater skated backwards into plaintiff).

b.  Reckless conduct.  "The imposition of tort liability for reckless disregard of safety can be based on either a subjective or objective standard for evaluating knowledge of the risk of harm."  Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 546 (2006).  The plaintiff has the burden to prove "the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and

---

[2] In Pfenning v. Lineman, 947 N.E.2d 392, 404 (Ind. 2011), the Supreme Court of Indiana took issue with some of the reasoning in Bowman, but ultimately approved of its conclusion that "intentional or reckless infliction of injury" is the proper standard.

deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk." Id. at 546-547, quoting Restatement (Second) of Torts § 500 comment a, at 588 (1965). We examine the record to determine whether there is evidence from which a jury could conclude that the teammate "engaged in extreme misconduct outside the range of the ordinary activity inherent in the sport." Borella, 96 Mass. App. Ct. at 624. Viewing the summary judgment record in the light most favorable to the plaintiff, she had no reasonable expectation of proving that the teammate's actions rose to this level of misconduct.

Contrary to the plaintiff's claim, a jury could not find that the teammate saw the plaintiff before the injury with enough time to prevent the accident. The plaintiff jogged onto the field near where the teammate was preparing to bat. The plaintiff testified at a deposition that the teammate had her back to the entrance, and she wore a batting helmet that limited her peripheral vision. Although the players were supposed to look around before swinging, the plaintiff did not remember whether the teammate looked around. The plaintiff's failure of memory in this regard does not directly contradict the teammate's affirmative recollection that she looked around her before she swung the bat. See Gray, 49 Mass. App. Ct. at 440 n.4 (plaintiff's assertion that golfer "could have and should

have been able to see the plaintiff" did not rebut defendant's deposition testimony that he did not see plaintiff). But even were we to assume that there was a sufficient factual dispute over whether the teammate looked before she swung, and that the plaintiff was "capable of being seen from at least the time she was passing by the chain link gate until she was hit" (as the plaintiff's expert opined), there is no rational view of the evidence that the teammate in fact saw the plaintiff before the teammate swung the bat with enough time to prevent the accident. Accordingly, this scenario, as a matter of law, did not rise to the level of recklessness. See id. (golfer was not reckless where he did not see plaintiff before taking his shot and plaintiff was not in intended path of golfer's shot); Bowman, 853 N.E.2d at 996-997 (plaintiff's conduct was not reckless where she struck coparticipant with backswing without ascertaining coparticipant's precise location during high school golf practice).

The plaintiff disputes that the coach had given the "go" signal for the teammate to begin batting. Viewing the evidence in favor of the nonmoving party, even if the teammate swung her bat before the coach told players to start, the teammate's actions were at most negligent. The plaintiff was a collegiate softball player who had played for fourteen years at the time of her injury. The plaintiff acknowledged that the coaches did

"not necessarily hav[e] to micromanage every part" of the practice, and players could begin practicing at their station before the coach said "go." Based on the players' experience and skill level, this conduct, as a matter of law, was not reckless. See Borella, 96 Mass. App. Ct. at 624.

The plaintiff claims she said "wait" before the incident. In her deposition, however, the plaintiff did not remember whether she said "wait" out loud or in her head. She did not remember her exact location when she said "wait," the timing of when she said it, or how loudly she said it. Indeed, the plaintiff stated that she yelled "wait" "almost immediately" before she was struck. Accordingly, there was no evidence that the teammate could or did hear the plaintiff say "wait" before the teammate swung her bat, let alone in enough time to stop her swing. Indeed, the teammate testified in her deposition that she did not hear the plaintiff say anything before the accident. The plaintiff had no reasonable expectation of proving recklessness from this evidence. See Patterson v. Liberty Mut. Ins. Co., 48 Mass. App. Ct. 586, 592 (2000) (party "cannot prevail if any critical element is left to surmise, conjecture or speculation or otherwise lacks evidential support").

4. Claims against the Suffolk defendants. Although a coach's duty of care to opposing players is the same recklessness standard that applies to the players she coaches,

Borella, 96 Mass. App. Ct. at 628, we assume without deciding that a coach ordinarily has a duty of ordinary reasonable care to her own players.  See Kavanagh, 440 Mass. at 202 (not reaching this question).  Cf. Moose v. Massachusetts Inst. of Tech., 43 Mass. App. Ct. 420, 425 (1997) (university and coaches liable in negligence to injured pole vaulter for unsafe equipment and landing pit).  Here, however, it is uncontested that Suffolk University had an enforceable liability waiver barring the plaintiff from bringing an ordinary negligence suit.  See Rafferty v. Merck & Co., 479 Mass. 141, 155 (2018), quoting Maryland Cas. Co. v. NSTAR Elec. Co., 471 Mass. 416, 422 (2015) ("'while a party may contract against liability for harm caused by its negligence, it may not do so with respect to its gross negligence' or, for that matter, its reckless or intentional conduct").  Thus, we analyze the plaintiff's claims only for gross negligence and recklessness.

a.  Gross negligence.  "[G]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence. . . .  It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care."  Parsons v. Ameri, 97 Mass. App. Ct. 96, 106 (2020), quoting Altman v. Aronson, 231 Mass. 588, 591-592 (1919).  "The 'voluntary incurring of obvious risk' and 'persistence in a palpably negligent course of conduct over

an appreciable period of time' are among 'the more common indicia of gross negligence.'" Parsons, supra, quoting Lynch v. Springfield Safe Deposit & Trust Co., 294 Mass. 170, 172 (1936).

The plaintiff's expert stated that the positioning of the tee station near the entrance enhanced the risk of serious danger for the players when there were safer alternative locations for the drill. The head coach gave the players approximately five minutes to transition. The head coach had no reason to believe that these trained collegiate athletes would enter the field while players were swinging their bats at the tee station. Based on the collegiate athletes' knowledge and experience, the head coach's assertedly inadequate planning makes out, at worst, only ordinary negligence. See Aleo v. SLB Toys USA, Inc., 466 Mass. 398, 410 (2013), quoting Altman, 231 Mass. at 591 ("Gross negligence . . . is materially more want of care than constitutes simple inadvertence").[3]

It remains a contested fact whether the coach told the players to start their stations before everyone was in place.[4] Taking all inferences in favor of the plaintiff, it was at most

---

[3] Gross negligence, of course, takes into account the age, experience, and skill level of the players. A setup that is merely negligent for experienced collegiate athletes might well be grossly negligent for beginners or young children.

[4] The teammate testified that she was told to start. The head coach said that she had already said "go."

negligent for the head coach to have prematurely yelled "go" before all of the trained athletes were at their next station.

b. Recklessness. "[R]eckless conduct involves a degree of risk and a voluntary taking of that risk so marked that, compared to negligence, there is not just a difference in degree but also a difference in kind." Gray, 49 Mass. App. Ct. at 440, quoting Sandler v. Commonwealth, 419 Mass. 334, 337 (1995). "[I]n order to impose liability on a coach for the conduct of a player, there must be, at the least, evidence of 'specific information about [the] player suggesting a propensity to engage in violent conduct, or some warning that [the] player . . . appeared headed toward such conduct as the game progressed.'" Borella, 96 Mass. App. Ct. at 628, quoting Kavanagh, 440 Mass. at 203. Here, there is no indication that the teammate intentionally struck the plaintiff or that the teammate had a history of reckless conduct. The plaintiff testified that she and the teammate were best friends, and that she did not think the teammate hit her on purpose. See Gray, supra. As a matter of law, there is no basis for a jury to find that the head coach acted recklessly in allowing the teammate to practice hitting off tees.

Judgment affirmed.